Timothy Montileone, et al.

-vs-

AAMCO Transmissions, Inc., et al.

Complaint

EXHIBIT 9

Mutual Termination of Franchise Relationship

This Agreement dated September 14, 2011 is between AAMCO Transmissions, Inc. ("ATI") on the one hand, and Kevin Bladow ("Franchisee") on the other hand and relates to the AAMCO Transmissions center located at 235 Tennant Avenue #1 Morgan Hill, CA ("Center").

WHEREAS, on or about August 8, 2008, Franchisee entered into a Franchise Agreement with ATI whereby Franchisee were granted the right to operate an AAMCO Transmissions franchise at the Center (the "Franchise Agreement");

WHEREAS, Franchisee and ATI have agreed to mutually terminate their franchise relationship, and that effective as outlined below, in exchange for certain consideration offered by ATI, Franchisee will, among other things, agree to vacate the Center and transfer and/or assign to ATI all of Franchisee's ownership interests in the equipment and supplies located at the Center, the leasehold rights for the Center, and the telephone numbers associated with the operation of the Center; at ATI's request.

NOW THEREFORE, for valuable consideration the sufficiency of which is acknowledged by the parties, ATI and Franchisee agree as follows:

1. ATI and Franchisee agree that both the Termination of Franchise Agreement document attached hereto as Appendix A and the Release document attached hereto as Appendix B will become effective on the commencement date of the lease between ATI (through its affiliate American Driveline Communications Corp, ["ADCC"]) and landlord for the Center (the "Lease"), which such Lease is contemplated by Section 6 herein; hereinafter, the commencement date of the Lease will be known as the "Lease Commencement Date."

2. Franchisee agrees, no later than 8:00 a.m. PST on the Lease Commencement Date, to cease operating any transmission and/or automotive repair business at the Center, and to voluntarily vacate the Center by this same time. Franchisee, further agrees to continue to operate the Center per the terms of the Franchise Agreement until the Lease Commencement Date, unless directed otherwise in writing by ATI.

3. Franchisee hereby transfers and/or assigns to ATI all of the equipment, inventory, supplies, and fixtures in and associated with the Center (the "Assets"). The Assets are delivered "as is" with regard to quality and condition of the items provided the items are in good working order; however, the Assets are not delivered "as is" with regard to liens and encumbrances as contemplated herein. Franchisee further agrees to leave the Assets in the center in a manner consistent with standard AAMCO operations. Franchisee warrants and represents that the Assets are free and clear of all liens and encumbrances. Franchisee agrees to defend and hold harmless ATI from any claims brought against ATI with regard to the Assets or the business at the Center. Franchisee shall have reasonable access to AAMCO repair orders dated prior to the Lease Commencement Date as may be required for BAR compliance for a period of three years from the Lease Commencement Date. KJB Holdings will provide five days written notice prior to accessing said repair orders.

    a) The Assets do not include:

        i) 2005 Chevrolet Pickup Truck (shop Truck)

        ii) Office chair owned by Kevin Bladow

        iii) Brother MFC printer owned by Kevin Bladow (provided there is another Brother MFC printer remaining in the Center; if not, this item is not excluded from the Assets)

    ordinary course of business;

   b. keep the details of this Agreement and appendices hereto wholly confidential in all respects (except for the confirmations that may be required per in Section 5 above); and

   c. refrain from making any comment, or taking any action, that can reasonably be construed as derogatory, defamatory, or otherwise damaging to AAMCO or the AAMCO brand.

8. Franchisee represents and warrants that i) with the exception of Kevin Bladow's personal computer, no equipment or fixtures associated with the Center have been removed or replaced within the sixty days prior to the date of this Agreement and ii) to the best of Franchisee's knowledge, there are no current existing, pending, or threatened liens on the Assets or Franchisee's business at the Center. Franchisee is not obligated to empty or remove oil storage tanks or other related waste that have accumulated provided that the volume of such materials is reasonably within the normal course of business for AAMCO centers with similar gross sales.

9. Franchisee agrees to sign the Termination of Franchise Agreement document attached hereto as Appendix A and the Release document attached hereto as Appendix B, both of which are incorporated herein by reference; ATI agrees to execute Appendix A.

10. Franchisee agrees that any reference in this Agreement, or any of its appendices, to "Franchisee" also includes (in addition to Kevin Bladow the individual) any incorporated/legal entity owned or substantially owned by Kevin Bladow that is in any way related to the operation of the Center.

11. ATI agrees, from the Lease Commencement Date forward, to fulfill Franchisee's remaining contractual obligations for Yellow Pages with DAC Huchins Group. Franchisee agree to satisfy any monetary obligations to DAC Huchins Group and all other vendors associated with the operation of the Center that have or will arise prior to the Lease Commencement Date. ATI further agrees that there shall be no transfer or related fee charged to Franchisee.

12. ATI agrees to make satisfactory arrangements with the Franchisee's local advertising pool to settle Franchisee's debt to such advertising pool. ATI further agrees to, anytime after three months from the Lease Commencement Date, to provide Franchisee with the balance of any remaining portion of his AAMCO Security Deposit, within a reasonable time of Franchisee requesting same.

13. Franchisee agrees to take such action, and execute such documents, as may be necessary to transfer from Franchisee to ATI all rights and interests of Franchisee in any telephone number associated with the business operated at the Center.

14. Franchisee agrees, in further cooperation and upon the request of AAMCO, to sign any document or take any action reasonably necessary to effectuate the provisions of this Agreement.

15. ATI and Franchisee agree that Franchisee shall be entitled to retain customer payments for all transmissions that have been built prior to the Lease Commencement Date, and that ATI shall be entitled to retain customer payments for all transmissions that have been built on or after the Lease Commencement Date.

Appendix A

## TERMINATION OF FRANCHISE AGREEMENT

WHEREAS, a franchise agreement was entered into between Kevin Bladow (collectively "Franchisee") and AAMCO Transmissions, Inc. ("Franchisor"), on or about August 8, 2008 for the operation of AAMCO Transmissions center located at 235 Tennant Avenue #1 Morgan Hill, CA (the "Franchise Agreement"); and

WHEREAS, it is the desire of Franchisor and Franchisee that the Franchise Agreement be ended and terminated.

NOW, THEREFORE, for and in consideration of the mutual agreements contained herein, and other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, Franchisee hereby releases all rights he may have under the Franchise Agreement and are hereby released by Franchisor from all obligations he may have under the Franchise Agreement, except for those obligations set forth in Sections 12.2, 19.2, 20, & 28 that will survive, and the Franchise Agreement is terminated effective per the terms of the Agreement to which this Appendix A is attached.

IN WITNESS WHEREOF, intending to be legally bound hereby, the parties hereto have set their hands and seals this ____ day of _____ 2011.

AAMCO TRANSMISSIONS, INC.

BY: _____
Marc Graham, President

_____
Kevin Bladow, individually

thereof, and which if known to Franchisee on the date of execution of this Release would have materially affected Franchisee's decision to execute this Release, but which unknown risk or claim Franchisee hereby assumes and expressly agrees that this Release applies thereto (except as stated two paragraphs above).

Franchisee has read this Release and understands this is a full and complete release of all rights and claims (except those related to the Agreement to which this Release is attached) of any nature Franchisee has against Franchisor.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 15 day of September 2011.

_____
Kevin Bladow, individually